IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NICKOLAS TERRANOVA,

      Plaintiff,

v.                                                        Case No.  25-2114-JWB

INTERRAIL TRANSPORT OF KANSAS CITY LLC,

      Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion to dismiss. (Doc. 16.) The motion has been fully briefed and is ripe for decision. (Docs. 17, 19, 20.) The motion is GRANTED for the reasons stated herein.

**I.    Facts**

The facts set forth herein are largely taken from the amended complaint. (Doc. 13.) Plaintiff is a white male who began employment with Defendant in the summer of 2023. Both of Plaintiff's supervisors were black. (*Id.* ¶¶ 17–18.) Within two weeks of the start of his employment, both his supervisors told him that he is "on white boy shit" and looks like "he is going to shoot up the job." (*Id.* ¶ 19.) Other employees repeated that Plaintiff was on "white boy shit." (*Id.* ¶ 20.) Plaintiff alleges that he made complaints that the racial slurs were making him feel uncomfortable but was told to lighten up and relax. The slurs continued into October 2023. In early October, another coworker told him to get his "bitch ass on the bus." (*Id.* ¶ 30.) Plaintiff did not respond. One of his supervisors asked Plaintiff if he was going to let the coworker talk to him like that and if Plaintiff was a grown man. (*Id.* ¶ 32.) Plaintiff alleges that he complained to

1

his supervisors that everyone on the bus was using racial slurs, disrespecting him, and cursing at him.

Plaintiff attached as an exhibit his alleged complaint to Defendant regarding the racial slurs. (Doc. 1-3.) A review of the complaint, which is titled "witness statement" and dated October 18, 2023, does not show that he in fact complained about racial slurs. Rather, the document appears to be a statement regarding concerns surrounding Plaintiff and whether he was in fact going to shoot up Defendant's place of employment. The statement says that while on the bus the employees would give each other "shit" or make "fun" of Plaintiff; however, Plaintiff knew that the employees were "being playful with me." (*Id.*) Plaintiff further stated in all capital letters that "WE WERE ALL JOKING." (*Id.*) Plaintiff stated that he had "never ever once took offense to them playing with me." (*Id.*) At no point in this statement does Plaintiff complain about racial slurs.

Plaintiff alleges that after making this complaint Defendant transferred him to a different location that resulted in an extra hour commute. Plaintiff further alleges that Defendant failed to investigate and failed to discipline employees for their conduct. No other black employees were transferred after Plaintiff's complaint. One day later, on October 19, 2023, Plaintiff "constructively terminated his employment." (Doc. 13 ¶ 45.) Defendant's records indicated that Plaintiff was being investigated from October 18–26, 2023, due to an accusation that he made a threat against employees and the facility. (Doc. 1-4.) Defendant's client, BNSF, asked that Plaintiff not return to the property. Plaintiff was asked to relocate to the Belton, Missouri location. Plaintiff failed to show up for work. (*Id.*)

On April 8, 2024, Plaintiff filed a charge of discrimination with the EEOC. (Doc. 1-1.) A right to sue letter was issued on December 10, 2024. (Doc. 1-2.) This action was filed on March

10, 2025. (Doc. 1.) Plaintiff alleges claims of race discrimination and hostile work environment in violation of Title VII and 42 U.S.C. § 1981 and retaliation in violation of Title VII. Defendant moves for dismissal of the claims.

## II.  Standard

In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

## III.  Analysis

### A.  Hostile Work Environment

Defendant moves to dismiss Plaintiff's claim of hostile work environment on the basis that Plaintiff has not sufficiently stated a claim. A hostile work environment claim is "composed of a series of separate acts that collectively constitute one unlawful employment practice." *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021) (quoting *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). To state a racially hostile work environment claim under Title VII, a plaintiff must allege: (1) membership in a protected class[1]; (2) he was subjected to unwelcome harassment; (3) the harassment was due to race; and (4) the harassment was so severe

---

[1] Title VII prohibits discrimination on the basis of race. In *Oncale*, the Supreme Court made clear that Title VII protects everyone, including white males. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) ("Title VII's prohibition of discrimination 'because of ... sex' protects men as well as women.") However courts, including the Tenth Circuit, continue to include membership in a protected class as an element of a hostile work environment claim. Therefore, the court includes it here, even though the obvious import of *Oncale* is that everyone is in a protected class.

or pervasive that it altered a term, condition, or privilege of his employment and created an abusive environment. *Young v. Colo. Dep't of Corr.*, 94 F.4th 1242, 1249 (10th Cir. 2024).

Defendant moves to dismiss this claim on the basis that Plaintiff has failed to plausibly allege that he was subjected to unwelcome harassment in light of his pre-litigation statement in late October 2023. The court agrees. Plaintiff's amended complaint alleges that his supervisors and co-workers repeatedly used the phrase "white boy shit" and said that he was going to shoot up the workplace. (Doc. 13 ¶¶ 19–20.) Plaintiff alleges that these statements made him extremely uncomfortable. (*Id.* ¶ 21.) Plaintiff's statement in late October 2023, however, states that he was not offended by any statements or remarks and that he understood that everyone was joking and that they were playing with him. (Doc. 1-3.) The court may consider this statement because it was attached to the complaint. *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Tenth Circuit has recognized that in some circumstances when documents contradict allegations in the complaint, the "document's facts or allegations trump those in the complaint." *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1238 (10th Cir. 2014). Here, the statement was made by Plaintiff the day before he was allegedly constructively discharged. Plaintiff characterizes this statement in his amended complaint as a complaint of race discrimination. (Doc. 13 ¶ 38.) The statement is not a complaint of race discrimination. Rather, it appears to be (as Defendant represents) a statement Plaintiff made in an investigation regarding Plaintiff's own words. In any event, that statement, which is properly considered by the court, makes clear that Plaintiff took no offense to the comments made by his co-workers and supervisors. It clearly contradicts the allegations that Plaintiff now makes about being called a "white boy." Given that this statement was made only one day before he left Defendant's employment, it is difficult for the court to reconcile the allegations in the amended

complaint with Plaintiff's statement. In sum, the court finds that Plaintiff has not plausibly alleged unwelcome harassment.

Further, viewing the allegations and Plaintiff's statements, the court finds that Plaintiff has not plausibly alleged that the harassment was so severe or pervasive that it altered a term, condition, or privilege of his employment and created an abusive environment. *See Keenan-Coniglio v. Cumbres & Toltec Scenic Operating Comm'n*, 769 F. Supp. 3d 1216, 1239–40 (D.N.M. 2025) (finding that isolated statements about gringos and white boys was not severe or pervasive).

Therefore, this claim is subject to dismissal.

**B. Retaliation**

Plaintiff also brings a claim of retaliation under Title VII and contends that he was transferred after reporting unlawful discrimination and harassment to management and/or human resources. Defendant moves to dismiss this claim on the basis that Plaintiff failed to exhaust his administrative remedies.

An affirmative defense of failure to exhaust can be raised in a motion to dismiss under Rule 12(b)(6) when the grounds for the defense appear on the face of the complaint. *See Cirocco v. McMahon,* 768 F. App'x 854, 857-58 (10th Cir. 2019). In deciding a Rule 12(b)(6) motion, the court ordinarily considers only the allegations of the complaint, although the court may also consider documents attached to the complaint or documents referred to in the complaint if they are central to the plaintiff's claims and the parties do not dispute their authenticity. *Smallen v. The W. Union Co.,* 950 F.3d 1297, 1305 (10th Cir. 2020). Here, Plaintiff attached his EEOC charge to his initial complaint. The court considers Plaintiff's allegations in the EEOC charge in determining whether he exhausted his administrative remedies as to the retaliation claim.

Title VII makes it unlawful for an employer to discriminate against an employee on the basis of (among other things) the person's sex, color, or national origin. 42 U.S.C. § 2000e-2(a)(1). Before an employee may bring suit on such a claim, the employee must exhaust administrative remedies by filing a timely charge with the EEOC identifying the parties and describing the practices complained of. *Jones v. Needham,* 856 F.3d 1284, 1289 (10th Cir. 2017).

The court is to "liberally construe the allegations in the EEOC charge, which 'must contain facts concerning the discriminatory and retaliatory actions underlying each claim.'" *Clark v. 10 Roads Express, LLC*, No. 23-3067, 2023 WL 6997397, at *1 (10th Cir. Oct. 24, 2023). In doing so, the court must determine if a retaliation claim "can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Delsa Brooke Sanderson v. Wy. Highway Patrol,* 976 F.3d 1164, 1170 (10th Cir. 2020).

Here, Plaintiff did not utilize a check box form. Rather, the form included a section for Plaintiff to describe his complaint. That section included a statement that he was filing the charged based on "race discrimination." (Doc. 1-1 at 1.) Plaintiff's charge describes racial harassment and jokes about shooting up the place. Plaintiff asserts that the jokes resulted in a police investigation and his involuntary transfer. Plaintiff states that he "attempted to make complaints." (*Id.*) Plaintiff's EEOC complaint asserts that he was transferred or constructively discharged due to the jokes and that other black employees were allowed to tell jokes without repercussions. (*Id.*) Liberally construing Plaintiff's complaint, the court finds that he did not exhaust a claim of retaliation. Plaintiff fails to assert that he made a complaint of race discrimination and that his involuntary transfer was a result of the protected activity.

Therefore, Plaintiff's retaliation claim is dismissed without prejudice for failing to exhaust this claim.

6

### C. Race Discrimination

In counts 1 and 2, Plaintiff has alleged that Defendant discriminated against him on the basis of his race in violation of Title VII and § 1981. Regardless of whether Plaintiff's claims are brought pursuant to Title VII or § 1981, "the elements of a discrimination lawsuit are the same." *Gerovic v. City & Cnty. of Denver*, No. 22-1148, 2023 WL 2293518, at *7 (10th Cir. Mar. 1, 2023) (quoting *Fulcher v. City of Wichita*, 387 F. App'x 861, 864 (10th Cir. 2010)). Therefore, the court will address these claims together.

To demonstrate a prima facie case of discrimination, Plaintiff must establish that (1) he suffered an adverse employment action; and (2) the challenged action took place under circumstances giving rise to an inference of discrimination on the basis of his race.[2] *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012) (citing *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007)). "A complaint raising a claim of discrimination does not need to conclusively establish a prima facie case of discrimination, but it must contain more than [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Bekkem v. Wilkie*, 915 F.3d 1258, 1274 (10th Cir. 2019). The Tenth Circuit does not "mandate the pleading of any specific facts in particular, [but] a plaintiff must include enough context and detail to link the allegedly adverse employment action to a discriminatory or retaliatory motive with something besides sheer speculation." *Id.* at 1274–75 (internal quotations omitted).

Defendant moves for dismissal of this claim on the basis that Plaintiff did not suffer an adverse action. In his amended complaint, Plaintiff alleges that the adverse action was his transfer

---

[2] Courts often include a third element: that the plaintiff belongs to a protected class. *See, e.g., Daniels*, 701 F.3d at 627. However, that element can be misleading. Title VII does not limit its protections to disfavored groups or classes of people. *See* 42 U.S.C. § 2000e-2(a). Rather, it prohibits certain categories of discrimination, such as discrimination on the basis of race or sex. *See id.*; *see, e.g. Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) ("Title VII's prohibition of discrimination 'because of ... sex' protects men as well as women.")

to the Belton location and his constructive termination. Defendant asserts that the transfer was not an adverse action because it was merely an inconvenience. A "mere inconvenience or an alteration of job responsibilities is not an adverse action." *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1222 (10th Cir. 2022). Defendant cites to *Sanchez v. Denver Public Schools*, 164 F.3d 527, 532 (10th Cir. 1998), for the proposition that a significant increase in commuting time does not constitute an adverse action. However, in *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 358 (2024), the Supreme Court abrogated the holding in *Sanchez* requiring a plaintiff to show a significant change in employment conditions. Rather, a plaintiff need only "show some injury respecting her employment terms or conditions." *Id.* at 359. It does not matter if his pay and rank remained the same if there is another change in conditions that caused an injury. *Id*. Title VII prohibits a transfer based on race. Here, Plaintiff has alleged that he has suffered economic damages in that he now has to commute another hour to the workplace. The court finds under *Muldrow* that this is sufficient to show an adverse action.

Plaintiff also alleges that he was constructively terminated. (Doc. 13 ¶ 45.) Plaintiff's allegation, however, is entirely conclusory. A plaintiff may allege that he was constructively discharged when he resigns but that theory is only available if the working conditions were so objectively intolerable due to the employer's actions that a reasonable person would have no choice but to resign. *Narotzky v. Natrona Cnty. Mem'l Hosp. Bd. of Trs.*, 610 F.3d 558, 565 (10th Cir. 2010) (citations omitted). Plaintiff failed to allege that this was the reason for his resignation. Rather, the allegations clearly state that he was told he had to be transferred or terminated. And that the transfer would impose an economic hardship. There is no allegation that the working conditions in the Belton location were intolerable.

The constructive discharge theory is also available when the employer forces the employee to choose between resignation or termination. *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 860 (10th Cir. 2007). That did not occur here. Plaintiff has failed to plausibly allege that he was constructively discharged. Therefore, he has not sufficiently alleged an adverse action with respect to his constructive termination.

Defendant also asserts that Plaintiff has not plausibly alleged that the transfer took place under circumstances giving rise to an inference of discrimination. As to this, Plaintiff alleges that he was treated differently than his black co-workers. Specifically, Plaintiff alleges that he was transferred after making complaints and that other employees were not disciplined for racial slurs. To show an inference of discrimination based on disparate treatment, "Plaintiff must show that he was treated differently than other similarly situated employees who violated work rules of comparable seriousness." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997). Plaintiff does not allege that both he and his supervisors violated work rules of comparable seriousness. He also does not allege that he violated any work rules even though the documents attached to his original complaint appear to indicate that he allegedly made some sort of threat. Based on the documents attached to Plaintiff's original complaint, Plaintiff was transferred because the client would not allow Plaintiff back on the property due to his alleged threats of shooting up the place. (Doc. 1-4.) Plaintiff's own statement indicates that he did make some sort of threat but that it was a joke. (Doc. 1-3.) Plaintiff makes no attempt to argue that his alleged threat was a similar violation of workplace rules as the racial slurs. Further, Plaintiff's conclusory allegations that he was transferred due to racial discrimination are not plausible in light of the documents that have been incorporated into the complaint.

With respect to Plaintiff's allegation that he was transferred because he made a complaint, that allegation goes to his claim of retaliation which was not exhausted as discussed *supra*. The court finds that Plaintiff's claim of racial discrimination must be dismissed.

### D.  Amend

Finally, Plaintiff seeks leave to amend should the court find that he has failed to plausibly state a claim against Defendant. (Doc. 19 at 1.) In doing so, Plaintiff has failed to comply with this court's rules on a motion to amend which require Plaintiff to attach the proposed amended complaint to his motion. Further, Plaintiff's response brief fails to identify any facts that would be included so that Plaintiff would have a plausible claim.

Therefore, the court declines to grant leave to amend.

### IV.  Conclusion

Defendant's motion to dismiss (Doc. 16) is GRANTED.

IT IS SO ORDERED.  Dated this 20th day of November 2025.

\_\_ \_s/ John Broomes_____
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE